SIEGFRIED ROWN, RESPONDENT, *v.* THE CHRISTOPHER AND TENTH STREET RAILROAD COMPANY, APPELLANT.

*Street railroad company — when a driver has authority to give a passenger into the custody of a policeman — unlawful arrest — injury to feelings, and the indignity, to be considered in estimating the damages.*

A dispute arose between the plaintiff, while a passenger on one of the defendant's cars, and the driver thereof, as to whether or not he had paid his fare; the plaintiff insisting that he had, and the driver that he had not paid it. A policeman, called by the driver, arrested the plaintiff, upon his resisting the efforts of the driver to remove him, and took him to the station house, where he remained until morning when he was discharged by the court. The driver testified that the plaintiff, while resisting him, used profane and abusive language and conducted himself in a disorderly manner.

*Held*, that the act of the driver, in giving the plaintiff into the charge of the policeman, was within the apparent scope of his authority and rendered the defendant liable for the damages thereby occasioned.

The court instructed the jury that in estimating the actual damages sustained by the plaintiff, they could include the injury to the plaintiff's feelings and com-

pensation for the insult they deemed him to have sustained and the indignity to which he was subjected.

*Held*, no error.

APPEAL from a judgment in favor of the plaintiff, entered upon the verdict of a jury, and from an order denying a motion for a new trial made upon the minutes of the justice before whom the action was tried.

*Robinson, Scribner & Bright*, for the appellant.

*Albert Cardozo*, for the respondent.

DANIELS, J. :

The plaintiff was a passenger on one of the defendant's street cars. A misunderstanding arose between himself and the driver, there being no conductor, concerning the payment of his fare, the driver insisting that the plaintiff had not paid, and he insisting as positively that he had placed his fare in the box soon after entering the car, and he refused to pay again. The driver required him to pay or leave the car, which he declined to do, and afterwards called upon a policeman to interfere and remove him. A similar altercation as to the payment of fare again arose, when the driver endeavored to remove the plaintiff from the car, and upon his resistance he was taken in charge by the officer, and afterwards to the station-house, where he remained in custody during the night, and in the morning he was removed to the court, where, upon the presentation of the complaint, he was discharged. A controversy arose upon the evidence as to whether the plaintiff was placed in the custody of the officer on the complaint of the driver, at the time when the officer interfered. As the evidence was given upon this point it was a proper subject for the decision of the jury, and under the charge they must be held to have found in favor of the plaintiff. A like controversy arose as to the fact of the payment of his fare, and as the disposition of the case was submitted to the jury upon that as the controlling point, it is to be assumed now that they found the plaintiff to be correct in the statement made by him, that he had, in fact, paid his fare. His removal from the car by the driver was consequently a wrongful act. It was in the nature of an unlawful assault in the judgment of the law, and as the acts performed

by him were in the regular course of his employment, and within the authority possessed by him as the driver and manager of the car, the defendant was certainly liable for the driver's acts to that extent. The late authorities are so decisive against the defendant upon this point as to require no special examination to be given to them. (*Hoffman* v. *N. Y. Central, etc., R. R. Co.*, 87 N. Y., 25; *Schultz* v. *Third Ave. R. R. Co.*, 89 id., 242; *Stewart* v. *Brooklyn, etc., R. R. Co.*, 90 id., 588.)

Whether the driver acted within the limits of his authority, in making a complaint against the plaintiff and delivering him into the custody of the officer, is a point that has not yet been settled by authority. But that he was so authorized, by his own statements of his conduct and the inducement leading to its performance, is not considered to be involved in serious doubt. His statement was that the plaintiff not only resisted him in his attempt to remove him from the car, but beyond that made use of profane and abusive language, and was charged with having conducted himself in a disorderly manner, and that charge, under the authority of chapter 186 of the Laws of 1880, would not only justify his removal from the car, but in addition to that his arrest and confinement by the officer. This act, so far as it was designed to affect a charge of this description, is in the following language:

"Section 1. Any person who shall, by any offensive or disorderly act or language, annoy or interfere with the passengers of any public stage, railroad car, ferry boat, or other public conveyance, or who shall disturb or offend the occupants of such stage, car, boat or conveyance by any disorderly act, language or display, although such act, conduct or display may not amount to an assault or battery, shall be deemed guilty of a misdemeanor, and any police justice or justice of the peace of the city or county in which any of such acts shall be committed, shall have jurisdiction thereof."

And under it the driver of the car would be authorized to act as he did, if the plaintiff's conduct had been such as it was charged to be by the driver. He so regarded it according to his sworn statement and the testimony given by him upon the trial. It was consequently within the limits of his authority, in the views entertained by him, to deliver the passenger into the custody of the officer. The law was intended to be executed and enforced in that manner, and

the person under whose special supervision the misconduct intended to be punished will necessarily take place, is that of the driver of such a car. He consequently exercised an authority conferred upon him, when he made the complaint and placed the plaintiff in the charge of the officer, and the defendant was equally as liable for the consequence of that act as it was for the assault made by the driver upon the plaintiff in the effort to remove him. That he did, in fact, make use of the authority when the circumstances did not justify it will not relieve the defendant from liability for his conduct. For, where a servant acts within the scope or limits of the authority conferred upon him, designing to discharge the duty owed by him to his employer, and he acts erroneously, or in a case where the authority cannot, under the circumstances, be lawfully exercised, there the employer must bear the responsibility, for the act is within the limits of the authority conferred upon the servant. It was the authority of law given to the company that the driver claimed to exercise, but it was misapplied for the reason that the facts upon which he depended for his justification were shown to the satisfaction of the jury not to exist.

And the company cannot exonerate itself from liability because it had not, as a matter of fact, delegated this broad authority to the driver. He had it by virtue of his position and could exercise it within the scope of his employment, whenever a state of facts arose indicating to him that it was the proper course to be followed. What was done was a continuous act, beginning with the attempt of the driver to remove the passenger and terminating only with his discharge the next morning by the court before which he was taken. No division of it can, either legally or logically, be made relieving the defendant from any part of the liability incurred in consequence of the unlawful removal of the plaintiff from the car, and his imprisonment because of the fact that he resisted the effort of the driver to remove him.

The court was asked to direct the jury that the fact that the police justice refused to entertain the complaint and discharge the plaintiff did not, in any manner, tend to establish a liability on the part of the defendant. The proposition itself was too broadly stated, for the fact of the discharge was a circumstance which tended to make out the plaintiff's case, and in that manner to estab-

lish a liability on the part of the defendant.   It was in that view an essential circumstance to be proved, and the court merely left it to the jury to be considered by them without, in any manner, explaining the use which might be made of the fact.   And as it was pertinent to this extent, it cannot be said that any error arose out of the circumstance that the jury was not more specifically directed upon the subject.   But it was not left in this condition by the learned counsel for the defendant, for the proposition was again repeated without this exclusive qualification, and then the court stated to the jury that the fact of the discharge of the plaintiff by the police justice did not afford want of probable cause, which, as the charge had been given to the jury, was all that could strictly be required to be repeated by the court.   By the charge, as it was made, and the answers that were given, the jury were placed in full possession of the case and could not encounter any misunderstanding as to the points upon which it was to be determined.

The court restricted the jury in their verdict to the actual damages sustained by the plaintiff by reason of his removal and consequent imprisonment, and in estimating them the jury were instructed that they could include the injury to the plaintiff's feelings and compensation for the insult they deemed him to have sustained and the indignity to which he was subjected.   But that was no more than, in a case of this description, the plaintiff was entitled to have considered by the jury for the purpose of ascertaining the actual damages sustained by him.

To present the case clearly to the jury, the evidence of what occurred after the plaintiff was taken from the car and up to and including the time of his discharge was proper for their consideration.   It simply exhibited the development of the events naturally following and arising out of the unlawful act of the driver in endeavoring to remove the plaintiff from the car, and the objections therefore taken to the evidence were without substantial foundation, and do not require particular consideration.   They were rightly overruled and the evidence allowed to be submitted to the jury.

The essential facts upon which the legal liability arose were directly in dispute by the witnesses whose testimony was taken upon the trial.   Who was correct, was a question entirely proper

for the consideration of the jury, and the case is not one in which the court could lawfully interfere and set aside their verdict. It was not unfavorably presented for the defendant, and the judgment and order appealed from should be affirmed.

DAVIS, P. J., and BRADY, J., concurred.

Judgment and order affirmed.